# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### SOUTHERN DIVISION
### AT LONDON

| | | |
|---|---|---|
| **KEVIN A. RUFF,** | ) | |
| | ) | |
| **Petitioner,** | ) | **Civil Action No. 6:15-6-DLB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SANDRA BUTLER, *Warden*,** | ) | <u>**MEMORANDUM OPINION**</u> |
| | ) | <u>**AND ORDER**</u> |
| **Respondent.** | ) | |

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

## INTRODUCTION

Kevin A. Ruff is a federal inmate in the custody of the Bureau of Prisons ("BOP") and is currently confined at the Federal Correctional Institution-Manchester ("FCI-Manchester") located in Manchester, Kentucky. Ruff has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241. Ruff seeks an Order directing the BOP to retroactively designate the state prison in which he was previously confined as a place of confinement for his federal sentence, pursuant to 18 U.S.C. § 3621(b) and *Barden v. Keohane*, 921 F.2d 467, 478 (3rd Cir. 1990).

Although Ruff's federal sentence was imposed in 2001, he remained in state custody in Georgia for almost eleven (11) years, serving two state convictions, and did not begin to serve his federal sentence until August 11, 2011. The BOP has declined Ruff's request to designate the state prison where he served his Georgia state convictions

1

as a place of federal confinement, which action would have effectively credited all of the time which Ruff served in state custody to his federal sentence.

On May 15, 2015, this Court entered an Order [R. 3] directing Respondent Sandra Butler, Warden of FCI-Manchester, to respond to Ruff's § 2241 petition.  Butler filed her response on July 21, 2015.  *See* R. 8; *see also*, R. 9 (*nunc pro tunc* Order granting Respondent Butler's motion for an extension of time in which to file her Response to Ruff's § 2241 habeas petition)].  Butler has submitted various documents in support thereof, including the sworn Declaration of Grace Woods-Coleman [R. 8-1], Management Analyst at the BOP's Designation and Sentence Computation Center ("DSCC") located in Grand Prairie, Texas.  Ruff has filed no reply to Warden's Response, and the case is ripe for disposition.

The Court has reviewed Ruff's § 2241 petition, the Warden's Response, and other federal court records from Georgia.  As explained below, Ruff's § 2241 petition will be **denied** because Ruff has not set forth grounds entitling him to the retroactive designation and resulting credit which he requests be applied to the 120-month federal sentence which he is now serving.

## BACKGROUND
### 1.      Ruff's State and Federal Convictions

Ruff's state and federal convictions are summarized below, based on information set forth in the Declaration of Grace Woods-Coleman [R. 8-1], Management Analyst at the BOP's DSCC, and information obtained from the federal judiciary's online database,

Public Access to Court Electronic Records ("PACER"), relative to Ruff's federal criminal proceeding in Macon, Georgia.

**September 4, 1999**:  Ruff was arrested by Georgia State authorities in Hancock County, Georgia, and charged with possession of marijuana.  Ruff was released on the same day.  [Woods-Coleman Dec., R. 8-1, p. 1, ¶ I (2)].

**January 20, 2000**:  An indictment was issued in federal court in Macon, Georgia, charging Ruff with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  *United States v. Kevin Antonio Ruff*, No. 5:00-CR-5-CAR-CHW-1 (M.D. Ga.) [R. 1, therein].

**February 9, 2000**:  Ruff was arrested in Clarke County, Georgia, and charged with Armed Robbery and Hijacking a Motor Vehicle.  [Woods-Coleman Dec., R. 8-1, p. 2, ¶ I (3); *id.*, p. 12 (BOP-DSCC data of 5/20/15)].

**February 15, 2000**:  A federal writ of *habeas corpus ad prosequendum* was issued in Ruff's federal proceeding, directing the United States Marshal Service ("USMS") to transport Ruff from the Clarke County Jail in Athens, Georgia, to the district court for an initial appearance in the federal proceeding.  *See United States v. Ruff*, No. 00-CR-5-CAR-CHW-1 (M.D. Ga.) [R. 2, therein].  Ruff's federal arraignment transpired on March 1, 2000, at which time he pleaded not guilty.  *See id.*, docket entries of 3/1/00.

**August 2, 2000**:  Ruff secured bond on the federal charges and the USMS returned him to the custody of Georgia State authorities.  On that same date, Georgia

3

State authorities released Ruff on a Surety Bond as to the State of Georgia charges. [Woods-Coleman Dec., R. 8-1, p. 2, ¶ I (5)].

**February 2, 2001**:  Georgia state authorities arrested Ruff and charged him with Forgery, Financial Transaction Card Fraud, and Theft by Deception. [Woods-Coleman Dec., R. 8-1, ¶ I (6)].

**February 14, 2001**:  Another writ of *habeas corpus ad prosequendum* was issued in the federal case, pursuant to which the USMS again took custody of Ruff and transported him to the district court for sentencing in the federal case.  *See United States v. Ruff*, No. 00-CR-5-CAR-CHW-1 (M.D. Ga.) [R. 15, therein]; *see also*, Woods-Coleman Dec., R. 8-1. p. 2, ¶ I (7).

**February 15, 2001**:  Judgment was entered in the federal case, pursuant to which Ruff was sentenced to a 200-month prison term on his conviction for Possession with Intent to Distribute Cocaine.  *United States v. Ruff*, No. 00-CR-5-CAR-CHW-1 (M.D. Ga.) [R. 17, therein] ("the Federal Sentence").  The Federal Sentence was silent as to how the federal sentence was to run in relation to any pending state charges; no transcript of the sentencing hearing was prepared, and no appeal was filed.  *Id.*, R. 36, p. 2, therein.

**February 21, 2001**:  The USMS returned Ruff to the Georgia state authorities and a federal detainer was lodged against him.  [Woods-Coleman Dec., R. 8-1. p. 2, ¶ I (9)].

**March 14, 2001**:  Ruff was sentenced in the Superior Court of Athens-Clarke County, Georgia, to an 11-year prison term for Armed Robbery, and Hijacking a Motor Vehicle.  The Georgia Department of Corrections ("GDOC") granted Ruff "jail credit"

4

for two periods of time which he had served in custody: (1) between February 9, 2000, and August 2, 2000; and (2) between February 2, 2001 and March 13, 2001.  After receiving 215 days of "jail credit," the start date of Ruff's sentence on that conviction was August 11, 2000.  [Woods-Coleman Dec., R. 8-1 ¶ I (10); see also R. 8-2, pp. 18-19 (GDOC Sentence Computation Form)].

**April 19, 2001**:  Ruff was sentenced in Superior Court of Athens-Clarke County, Georgia, to a 5-year prison term for Theft by Deception, Financial Transaction Card Fraud, and Forgery.   The GDOC credited Ruff's sentence with time that he had served in custody between February 2, 2001 and April 18, 2001, for a total of 76-days of "jail credit."  Thus, after receiving 76 days of "jail credit," the start date of Ruff's sentence on that conviction was February 2, 2001. [Woods-Coleman Dec., R. 8-1, ¶ I (11); see also, R. 8-2, pp. 18-19 (GDOC Sentence Computation Form)].

**March 19, 2008**:  The district court in Macon, Georgia, reduced the Federal Sentence from 200 months to 151 months, pursuant to 18 U.S.C. § 3582(c)(2).  *United States v. Ruff*, No. 00-CR-5-CAR-CHW-1 (M.D. Ga.) [R. 20, therein].

**August 11, 2011**:  Ruff was discharged from the GDOC and came into the custody of the USMS, pursuant to the federal detainer which had been lodged against him.  Because the Federal Sentence did not specify that it was to run concurrently with Ruff's (at the time) yet to be imposed state sentence(s), the BOP determined that the Federal Sentence ran consecutively to Ruff's state sentence(s), and that it commenced on August 11, 2011, the date on which Ruff was released from GDOC custody and came

into federal custody.  Pursuant to 18 U.S.C. § 3585(b), the BOP applied one (1) day (September 4, 1999) as prior custody credit to the Federal Sentence.  [Woods-Coleman Dec., R. 8-1, ¶ I (13), *see also*, R. 8-3, p. 3 (GDOC Certificate of Discharge); id, p. 6 (BOP Sentencing Monitoring Computation Data ("SMCD") as of 5-18-2015, "Total Prior Credit Time" entry)].

**June 8, 2012**:  The district court in Macon, Georgia, further reduced the Federal Sentence from 151 months to 120-months, pursuant to 18 U.S.C. § 3582(c)(2).  *United States v. Ruff*, No. 00-CR-5-CAR-CHW-1 (M.D. Ga.) [R. 24, therein].

Ruff's projected release date is June 12, 2020.  *See* Woods-Coleman Dec., R. 8-1, ¶ I (15); *see also* SMCD, R. 8-3, at p. 6, ("Statutory Release Date Projected" and "Projected Satisfaction Date" entries); https://www.bop.gov/inmateloc/ (last visited on April 6, 2016, as to Kevin Antonio Ruff, BOP Register No. 89617-020).

## 2.    Ruff's Prior Motion Seeking Sentence Credit

On August 26, 2014, Ruff filed a *pro se* motion in in his federal criminal proceeding, in which he asked the district court to recommend that the BOP retroactively ("*nunc pro tunc*") designate the state prison in which he was previously confined as the place of confinement for the Federal Sentence, pursuant to 18 U.S.C. § 3621(b).  *See United States v. Ruff*, No. 00-CR-5-CAR-CHW-1 (M.D. Ga.) [R. 28, therein].

Alternatively, Ruff asked the Georgia district court to "exercise its discretion" pursuant to Fed. R. Crim. P. 36 to correct the Federal Sentence so that it would run concurrently with his various state court sentences.  [*Id*., p. 3, therein].  In other words,

Ruff sought an order from the Georgia district court that would enable him to receive about 11 years of credit on the Federal Sentence, representing time he spent in state custody serving his various state court sentences, prior to coming into federal custody.

On February 11, 2016, the Georgia district court denied Ruff's motion to correct his Criminal Judgment, concluding that based on federal sentencing laws, "…the circumstances of this case do not warrant a recommendation for retroactive designation." *See United States v. Ruff*, No. 00-CR-5-CAR-CHW-1 [R. 36, p. 4, therein].  The Georgia district court recounted that on June 8, 2012, the BOP sent a letter asking its position as to Ruff's request for a retroactive designation of the state facility as a place of confinement for service of his federal sentence.  *Id*., p. 3, therein.  The letter explained that Ruff would be eligible for immediate release if the retroactive designation were granted, and that the district court's position would not be binding on the BOP, but that it would be "helpful" in considering whether to grant or deny Ruff's request.  [*Id*.].  The district court stated that it "…intended to remain neutral with regard to the Bureau's decision on retroactive designation, and therefore did not respond to the Bureau's letter within the time frame directed."  [*Id*.]

However, in light of Ruff's August 26, 2014, motion, the district court addressed Ruff's request for a retroactive designation, but determined that under 18 U.S.C. § 3585(a), *Calculation of a term of imprisonment*, not such relief was not warranted.  The district court stated that on review of the record, it was aware when it sentenced Ruff that

state court charges were then pending against him, but that even so, it did not order the Federal Sentence to run concurrently with Ruff's then pending state court charges.

The district court further explained that a defendant is not entitled to statutory time served credit for his time in state custody, and that a term of imprisonment commences on the date on which the defendant ". . . is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served.'" [*Id.* (citing 18 U.S.C. § 3585(a)]. Next, the district court observed that credit for time served is available only if the time "has not been credited against another sentence," *id.*, (citing 18 U.S.C. § 3585(b)), and that under § 3585(b), it is the Attorney General, not the sentencing court, who has authority to calculate and apply credit for time served. [*Id.*].

Applying those statutes, the district court concluded that the BOP had properly denied Ruff's request for credit for the time which he had served in state custody. [*Id.*, at p. 5] Specifically, the district court noted that the Pre-sentence Investigation Report ("PSIR") in Ruff's criminal proceeding indicated that the Armed Robbery and Hijacking offenses took place on April 29, 1999; that the search which led to the charges in his federal criminal proceeding was conducted incident to Ruff's arrest on a warrant related to the Armed Robbery and Hijacking charges that were filed on September 4, 1999; and that under those facts, "…this custody did not arise from a charge on which Petitioner [Ruff] was arrested after the commission of the offense for which this sentence was imposed, and did not qualify for time-served credit under Section 3585(b)." *Id.*, pp. 5-6.

8

The district court reiterated that prior to the filing of Ruff's motion, it had maintained a neutral stance with respect to the BOP's determination of retroactive designation, but it listed other factors which indicated that a retroactive designation was not justified, i.e., that Ruff had been sentenced in the lower middle of the guideline range in place when the Federal Sentence was imposed; that Ruff had been convicted of a felony offense (two counts of burglary in 1996); that the amount of crack cocaine involved in his federal criminal proceeding was 166.7 grams, subjecting Ruff to a 10-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A); and that the Federal Sentence had since been lowered to the statutory minimum of 120 months.  [*Id*., pp. 6-7, therein]

Further, the district court reiterated that when it imposed the Federal Sentence, it was aware that Ruff was facing two new felony indictments in state court, but that even so, it did not order that the Federal Sentence run concurrently with any state sentence(s). [*Id*., p. 7, therein].  The district court explained that Ruff's new state court felony charges were not related to the federal drug crime for which he was sentenced, and that allowing Ruff to serve time on those charges concurrent with his 120-month federal sentence "…would not be consistent with the sentencing goals of 18 U.S.C. § 3553, particularly the need for the sentence to reflect the seriousness of the offense provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes."  [*Id*., pp. 7-8, therein]

The district court acknowledged that Ruff's state court judgments indicated that the state sentences were to run concurrently with other sentences, but stated that such

proclamations are not binding as to the Federal Sentence.  [Id., p. 8, therein].  As the district court explained, "The manner in which a state chooses to impose and execute its sentences does not affect the sovereign right of the United States to impose and execute its sentences in the manner deemed appropriate by the federal courts and the federal authorities."  [Id., (citations omitted)].  The district court concluded that the state court's apparent intent to impose concurrent sentences in its cases involving Ruff was "…not consistent with the goals of federal sentencing in this case."  [Id.].

Finally, the district court determined that under Fed. R. Crim. P. 36, it lacked "discretion" to correct the Federal Sentence so make it run concurrently with Ruff's state sentences, noting that Rule 36 authorizes only the correction of clerical errors, not a substantive change in the nature of the sentence.  [Id.].  The district court explained that modifying or changing the Federal Sentence to make it run concurrently with subsequently imposed state sentences would result in an impermissible alteration of the substance of the Federal Sentence, and that modification of federal sentence is permitted only under the specific circumstances set forth in 18 U.S.C. § 3582.  [Id., pp. 8-9, therein].  The docket sheet in the Georgia federal criminal proceeding does not reflect that Ruff appealed the district court's order of February 11, 2016.

## DISCUSSION

The BOP did not abuse its discretion when it determined that Ruff was not, and is not, entitled to a retroactive designation of the state facility where he served his state sentence as the place where he is serving his federal sentence.  The Order entered by the

10

Georgia district court on February 11, 2016, addressed and rejected the very same claims which Ruff asserts in his § 2241 petition, and that order effectively disposes of Ruff's § 2241 petition, which was a *de facto* duplication of the motion that he filed in August 2014 in the Georgia district court.  Admittedly, the Georgia district court's February 11, 2006, Order was entered after Respondent Butler filed her Response on July 21, 2015, but that order and the Respondent Butler's subsequent Response are, for all practical purposes, co-extensive because they address the same issues that Ruff raised in both proceedings.  The subsequent order entered in the Georgia criminal proceeding effectively supplements (if not pre-empts) Butler's Response on the issue of the Georgia district court's position on the issue of a retroactive designation.  Reading the Georgia district court's analysis in conjunction the Respondent Butler's Response in this action, it cannot be disputed that Ruff is not entitled to a retroactive designation, and thus is not entitled to the sentence credits which he seeks.  However, the Court will address the relevant issues which support this conclusion.

First, when the Georgia district court originally sentenced Ruff on February 15, 2001, it did not order the Federal Sentence to run concurrently with any of his yet-to be imposed state sentences.  Nor did the Georgia district court amend the Federal Sentence-- when it re-sentenced Ruff on March 19, 2008, and again on June 8, 2012, respectively--to reflect that the Federal Sentence was to run concurrently with Ruff's various state court sentences, which, by those two later dates, had of course been imposed.  As Respondent Butler correctly states, the Georgia district court consistently remained silent (between

February 2001 and June 2012) as to how the Federal Sentence was to run in relation to Ruff's state sentences, and correctly states that under 18 U.S.C. § 3584(a), "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." That statutory edict, standing alone, would provide a sufficient basis for concluding that the Federal Sentence runs consecutively to Ruff's state sentences, but this Court now has the benefit of the Georgia district court's insight, as set forth in its February 11, 2016 Order.

Ruff contends that the BOP has abused its discretion by refusing to effectuate a *Barden* retroactive designation. In determining whether the BOP abused its discretion, "[t]he test is not whether a reviewing court would weigh the factors differently. The writ may issue only where an error is fundamental and carries a serious potential for a miscarriage of justice." *Eccleston v. United States*, 390 F. App'x 62, 64–65 (3d Cir. 2010). Here, the BOP properly considered all relevant issues in a manner not patently inconsistent with the rule established in *Barden* and conducted the analysis required for a possible retroactive designation, using the five criteria set forth in 18 U.S.C. § 3621(b). *See* BOP Worksheet, R. 8-5, p. 19. As part of that process (Factor No. 4), the BOP wrote a letter dated June 8, 2012 to the Georgia district court--the sentencing court--seeking a recommendation as to whether a retroactive designation for Ruff was warranted. [Id., pp. 7-8]. At that time, the Georgia district court declined to make a recommendation on the issue of retroactive designation, but on February 11, 2016, that court unequivocally

announced its position on the issue, which was that a retroactive designation was not, and is not now, warranted.

As noted herein, the Georgia district court explained that the PSIR in Ruff's criminal proceeding indicated that the Armed Robbery and Hijacking offenses took place on April 29, 1999; that the search which led to the charges in his federal criminal proceeding was conducted incident to Ruff's arrest on a warrant related to the Armed Robbery and Hijacking charges which were filed on September 4, 1999; and that accordingly, Ruff's federal custody did not stem from a charge on which Ruff was arrested after the commission of the offense for which the Federal Sentence was imposed, and thus, Ruff did not qualify for time-served credit under 18 U.S.C. § 3585(b).

The Georgia district court further noted that the Federal Sentence was in the "lower middle" range of the applicable sentencing guidelines and had in fact since been lowered twice; that Ruff was subject to a 10-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A); that when it imposed the Federal Sentence, it was aware that Ruff was facing two new felony indictments in state court, but that those new felony charges were not related to the federal drug crime for which Ruff was sentenced; and that allowing Ruff to serve time on those charges concurrent with his 120-month federal sentence "…would not be consistent with the sentencing goals of 18 U.S.C. § 3553, particularly the need for the sentence to reflect the seriousness of the offense provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes." *U.S. v. Ruff*, No. 00-CR-5 [R. 36, pp. 7-8, therein]

13

Given the Georgia district court's recent and unambiguous explanation that Ruff's state sentences were unrelated to the drug offense which lead to the Federal Sentence; that Ruff did not otherwise qualify for a retroactive designation; and that such a designation would be inconsistent with federal sentencing goals, this Court does not hesitate to conclude that under Factor No. 4 of 18 U.S.C. § 3621(b) (any statement from the court that imposed the sentence), Ruff is not entitled to a *Barden* retroactive designation of the place where he served his state sentence as the place where he is serving his federal sentence.  Ruff has received all of the pre-sentence credit on the Federal Sentence to which he is entitled; that being for the one day of September 4, 1999.

Under 18 U.S.C. §3585(a), a federal sentence for a term of imprisonment begins on the date the defendant is received into official federal custody, which in this case was August 11, 2011, the day on which Ruff completed service of his state sentences, and on which he was turned over to the USMS to begin serving the Federal Sentence.  But prior to August 11, 2011, Ruff remained the in the primary custody of the State of Georgia.

In *Ponzi v. Fessenden*, 258 U.S. 254, 260-262 (1922), the Supreme Court first recognized the doctrine of primary custody, to provide an orderly method of prosecuting an individual who has violated the law of more than one sovereign.  Under this doctrine, the sovereign that first arrests an individual has primary control or custody over him; its claim over him has priority over all other sovereigns that subsequently arrest him; it is entitled to have him serve a sentence that it imposes, before he serves any sentence imposed by another sovereign; and it retains this priority, unless and until it has

14

relinquished its jurisdiction to some other sovereign.  *Id.*; *see also United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *United States v. Collier*, 31 F. App'x 161, 162 (6th Cir. 2002); *Bowman v. Wilson*, 672 F.2d 1145, 1153-54 (3d Cir. 1982); *In re Liberatore*, 574 F.2d 78, 88-89 (2nd Cir. 1978); *Rambo v. Hogsten*, No. 10-116-ART, 2010 WL 4791970 at *4 (E.D. Ky. Nov.17, 2010) ("When a defendant violates the laws of two different sovereigns, the rule is that the sovereign which first arrests him acquires the right to prior and exclusive jurisdiction over him.") (internal quotations omitted).

Primary custody continues until the sovereign that first arrested an individual has relinquished its jurisdiction in some way.  *See Banks v. United States*, No. 2:12-CV-2175, 2013 WL 3564135, at *2 (W.D. Tenn. July 11, 2013) (citing *United States v. Warren*, 610 F.2d 680, 684–85 (9th Cir. 1980); *accord Jones v. Farley*, No. 4:12–CV–0671, 2012 WL 4506002, at *3 (N.D. Ohio Sept.28, 2012).  If state authorities have primary jurisdiction over a prisoner, federal custody will not commence until state authorities relinquish the prisoner on satisfaction of his state obligation.  *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000); *Jake v. Herschberger*, 173 F.3d 1059 (7th Cir. 1999).

Here, when Ruff was last arrested on February 2, 2001, he was detained by Georgia State authorities and was remanded to their custody; from that date until August 11, 2011, Ruff remained in the primary jurisdiction of Georgia State authorities.  When Ruff came into federal custody on February 13, 2001, it was solely through a writ of *habeas corpus ad prosequendum*.  Respondent Butler has demonstrated through the Declaration of Grace Woods-Coleman, and the exhibits attached thereto, that Ruff

remained in the primary and exclusive jurisdiction of the State of Georgia between February 9, 2000 and August 2, 2000, and between February 2, 2001 to August 11, 2011, and that the GDOC applied those periods of time in custody to Ruff's state sentences. *See* Woods-Coleman Dec., R. 8-1, ¶I (10-11), (13): R. 8-2, pp. 18-20 (Georgia DOC Sentence Computation Form); R. 8-2, p. 8 (GDOC Certificate of Discharge)].  Under the doctrine of primary custody, the USMS properly returned Ruff to state custody immediately after the Federal Sentence was imposed on February 15, 2001.  Thus, Ruff could not have begun serving the Federal Sentence until he completed service of his Georgia state sentences on August 11, 2011.

Respondent Butler also correctly states that 18 U.S.C. Section 3585(b) bars awarding any credit toward a federal sentence for the time he spent incarcerated in primary state custody, if that time was credited to the state sentence. *See United States v. Wilson*, 503 U.S. 329, 337 (1992) ("Congress has made clear that a defendant could not receive double credit for his detention time."); *Broadwater v. Sanders*, 59 F. App'x 112, 114 (6th Cir. 2003) ("Because Broadwater received credit toward his state sentence for the time in question, he may not receive credit for this time toward his current federal sentence.  *See* 18 U.S.C. 3585(b).... If Broadwater were credited for this time against his current federal sentence, he would receive improper double credit."); *Ramirez v. Withers*, No. 6:13-43 (DCR), 2013 WL 2903278, at *4 (E.D. Ky. June 13, 2013) (holding that since the time which the § 2241 petitioner spent in state prison was credited against his state sentences, he could not use that time to "receive improper double credit" against his

16

federal sentence.); *Wallace v. D.L. Stine*, No. 08-287-GFVT, 2009 WL 2026385, at *13 (E.D. Ky. July 9, 2009) ("... Congress has specified that the credits are limited to time 'that has not been credited against another sentence.'")

Applying that principle here, crediting the Federal Sentence with the same two time-periods which the GDOC has already credited to Ruff's state sentences would amount to impermissible "double" or "dual" sentence crediting, a result that is prohibited by 18 U.S.C. § 3585(b).  *See McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993); *Garrett v. Snyder*, 42 F. App'x 756 (6th Cir. 2002).

Furthermore, Ruff was twice taken into temporary federal custody, first in February 2000, and again in February 2001, pursuant to a writ of *habeas corpus ad prosequendum* for the limited purposes of attending two court proceedings in his federal criminal case in Georgia.  But those events did not change the fact that Ruff remained in the primary custody of the State Georgia at all times between February 9, 2000 and August 11, 2011, the latter date being the date on which the GDOC released Ruff from state custody and turned him over to federal custody pursuant to the federal detainer which had been lodged with the GDOC.  During those two time-periods, Ruff was only "borrowed" by federal authorities while under writ of *habeas corpus ad prosequendum*, and he remained in the primary custody of the State of Georgia.  When a prisoner is taken into federal custody pursuant to a writ of *habeas corpus ad prosequendum*, the state retains primary jurisdiction over him, and primary jurisdiction is not transferred to federal authorities.  *Huffman v. Perez*, 230 F.3d 1358, 2000 WL 1478368, at *2 (6th Cir. Sept.

17

27, 2000) (Table); *United States v. Evans*, 159 F.3d 908, 911–12 (4th Cir. 1998); *Wardell v. Wilson*, No. 10-CV-294-GFVT, No. 10-CV-294-GFVT, 2011 WL 6027072, at *3 (E.D. Ky. Dec. 5, 2011).

Thus, when the Federal Sentence was imposed on February 15, 2001, the USMS was required to (and did) return Ruff to state custody, because the imposition of the Federal Sentence did not discharge Ruff of his obligation to satisfy the remaining, or "undischarged," portion of his Georgia state-court sentences.  Not until Ruff fully served and satisfied his term of imprisonment from the primary custodian (State of Georgia) was primary jurisdiction was relinquished to federal authorities pursuant to the federal detainer, and that event did not occur until August 11, 2011.  Ruff thus remained in the primary custody of the State of Georgia from February 9, 2000 to August 2, 2000, and from February 2, 2001 to August 11, 2011, and without the benefit of a concurrent federal sentence, he is not entitled to receive federal prior custody credit for these two time-periods, which the GDOC has already credited to Ruff's state sentences.

Although the Superior Court of Athens-Clarke County, Georgia, ordered Ruff's state sentences to run concurrently with the Federal Sentence, neither the federal courts nor the BOP are bound in any way by a state court's declaration that state and federal sentences run concurrently.  "While a state court may express its intent that a defendant's state sentence run concurrently with a previously imposed federal sentence, this intent is not binding on federal courts or the BOP."  *United States v. Allen*, 124 F. App'x 719, 720 (3d Cir. 2005). "[N]either the federal courts nor the Bureau are bound in any way by the

18

state court's direction that the state and federal sentences run concurrently." *Barden*, 921 F.2d at 478 n. 4 (citing U.S. Const., art. VI, cl. 2; *see also Banks v. Wilson*, No. 6:09-CV-350-GFVT, 2009 WL 5125282, at *4 (E. D. Ky. Dec. 17, 2009) ([Petitioner's] state sentence was ordered to run concurrently. His federal sentence was not ordered to run concurrently.... Therefore, 18 U.S.C. § 3584(a) controls for the federal sentence to run consecutively); *Gourley v. Wilson*, No. 09-CV-110-GFVT, 2009 WL 2448502, at *5 (E.D. Ky.  Aug. 10, 2009) (citing *Barden*, 921 F.2d at 478, n.4); *Rambo*, 2010 WL 4791970, at *6 ("… the state court's declared intent cannot alter the statutes and rules that dictate when a federal sentence commences. Federal law is, after all, supreme to state law.").  Therefore, the state court's statements about concurrent sentences did not bind the BOP or any federal court.

Finally, respondent Butler correctly argues that *United States v. Croft*, 450 F.2d 1094, 1097, 1099 (6th Cir. 1971), does not support Ruff's assertion that that when he was released from federal custody via a secured bond on August 2, 2000, the federal government did not lose primary jurisdiction over him and thus remained his primary custodian throughout his federal and state prosecutions.  In *Croft*, the Sixth Circuit held, on the particular facts, that Croft was entitled to federal sentence credit for time spent in state custody.  450 F.2d at 1099.  Federal authorities had initially arrested Croft, *see id*., at 1095 (unlike here, where Georgia state authorities first arrested Ruff).  Croft was therefore in primary federal custody, but was released on federal bond.  [*Id*.].

19

Kentucky state authorities subsequently arrested Croft on separate state charges. [*Id*.].  The federal court obtained Croft from state custody via a writ to resolve the prior federal charges; it ultimately sentenced Croft and it ordered that Croft be immediately committed to federal imprisonment.   [*Id*.].  For an unexplained reason, however, this did not happen; instead, authorities returned Croft to state custody.   Kentucky likewise convicted Croft of state charges, which were to run concurrently to the federal sentence. *Id*. at 1096.  Still, Croft did not re-enter federal custody and instead went to the La Grange State Penitentiary where he served 10 months and 8 days on the state sentence and was paroled; the USMS then took Croft into federal custody to begin serving the federal sentence.  The Sixth Circuit summarized these events as follows:

> If appellant had first been delivered by the Marshal to the federal prison, his state sentence would have been served before the conclusion of his federal sentence of three years.  Since he was first delivered to the state prison by the Sheriff, his federal sentence of three years would commence after his state sentence of two years.  In the first case, his total imprisonment on both federal and state sentences would have totalled three years; in the second case, it would total five years.  No one, neither state nor federal judge, considered that appellant should serve more than three years, at the most.

> The issue is whether, after the order of commitment was delivered by the District Court to the Marshal, he should have taken appellant into custody and, subsequent to the trial and sentence in the state court, delivered appellant to the federal place of detention for service of the federal sentence prior to delivery of appellant by the Sheriff to the state prison.

*Id*. at 1096.

Thus, Croft addresses circumstances under which a court has issued a valid sentence and a valid commitment order, but the "officer refuses to act on it, and turns the

20

prisoner over to another jurisdiction[.]"  *Id*. at 1097.  In such a case, the court "will refuse to find that the prisoner has not served his sentence, but will assume that he has served it, and will, in consequence, refuse authority for his further imprisonment."  [*Id*.]  *Croft* specifically differentiated cases where the prisoner "was first under the jurisdiction of the state court . . . prior to the lodging of the federal indictment[.]"  *Id*. at 1098.  In such a case, the state may be "entitled to have its sentence upon the prisoner executed before he could begin to serve the terms imposed by the federal court."  [Id.]  The Sixth Circuit did not address these questions, though, because "[t]he state court recognized prior jurisdiction of the federal court over the person of appellant Croft, and emphasized such recognition of prior jurisdiction of the federal court by making the state's sentence run concurrently with the federal sentence."  *Id*. at 1099.  The *Croft* court expressly held that Croft had remained in primary federal custody because of the original federal arrest "When [Croft] was released on bail, he was still considered as being in the custody of the federal Government; the bail did not divest the federal court of its inherent power to deal with the accused, since he was still constructively in the custody of the law."  Id. at 1098-99.  Here, Ruff was primarily a Georgia state detainee throughout.

The Sixth Circuit has subsequently recognized the distinctly limited nature of its holding in *Croft*.  *See*, *e.g.*, *Thomas v. Bogan*, 70 F.3d 1273, 1995 WL 692987, at *1 (6th Cir. 1995) (table) ("*Croft* is distinguishable because Thomas's incarceration in the state system did not result from a mistake by federal authorities."); *Vaughn v. United States*, 548 F.2d 631, 633 (6th Cir. 1977) (distinguishing *Croft*).  This Court has followed that

distinction.  *See*, *e.g.*, *Baker v. Stine*, No. 6:07-CV-40-DCR, 2007 WL 1875659, at *6 (E.D. Ky. June 28, 2007) (distinguishing *Croft*); *United States v. Morales*, No. 6:04-CR-88, 2009 WL 3486021, at *10-*11 (E.D. Ky. Oct. 23, 2009) (same).

*Croft*'s holding simply does not apply to Ruff.  First, the arrest sequence is backward.  State authorities in Georgia initially arrested Ruff; federal authorities first arrested Croft, a consideration impacting which sovereign held primary custody over the prisoner and thus the general sentence sequence.  The United States had primary custody over Croft, but Georgia had primary custody over Ruff, and *Croft* itself explicitly distinguished such cases.  *Croft*, 450 F.2d at 1098-99.  Unlike in the situation in *Croft*, federal authorities did not have primary custody of Ruff until he served out his Georgia sentences, which did not happen until August 11, 2011.  Second, the charging sequence was likewise different--Croft first faced federal, then state, charges; here, Ruff first faced state, then federal charges.

Third, unlike the Judgment and Commitment order in *Croft*, the Federal Sentence in Ruff's case did not require the USMS to immediately deliver him to federal prison for the execution of his sentence, nor was the Federal Sentence incorrectly postponed.  *See Thomas*, 962 F.2d at 361-362.  Here, Ruff was in federal custody solely via a writ of *habeas corpus ad prosequendum*, and the Federal Sentence did **not** order immediate federal incarceration; instead, it specified that Ruff was "…remanded to the custody of the United States Marshal."  *See* R. 8-2, p. 8 ("Imprisonment" conditions).

Thus, federal authorities did not violate *Croft* by returning Ruff to state custody upon expiration of the need of the writ of *habeas corpus ad prosequendum*.  No facts indicating mistake, error, or malfeasance by authorities can be gleaned in this case, as this was not an "erroneous delivery" by state or federal actors.  *Croft*, 450 F.2d at 1099.  The Sixth Circuit itself has suggested that *Croft* is applicable only in cases of mistake.  *Thomas*, 70 F.3d 1273, 1995 WL 692987, at *1 (6th Cir. Nov. 17, 1995).  Simply put, the USMS did not make a mistake or disobey the Federal Sentence by returning Ruff to state custody under writ mechanics after he was sentenced in federal court.

Fourth, and finally, in contrast to the facts in *Croft* (wherein the federal judge was tempted to give Croft relief) the district Court in Ruff's federal criminal case recently set forth its opposition to Ruff serving his state and federal sentences concurrently in the Order of February 11, 2016.  For these reasons, *Croft*'s holding does not apply to Ruff, and it provides him with no basis for relief under 28 U.S.C. § 2241.

In light of the foregoing considerations, the Court will deny Ruff's habeas petition, because the BOP has not abused its discretion in denying him the retroactive designation (and hence, the effective sentencing credit) which Ruff seeks in this § 2241 proceeding.  The BOP has applied all of the credit (one day, September 4, 1999) to the Federal Sentence which it is required to apply under the facts of this case.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1.      Petitioner Kevin Antonio Ruff's 28 U.S.C. § 2241 petition for a writ of habeas corpus [R. 1] is **DENIED** and the Court will enter an appropriate Judgment.

2.      This matter is **STRICKEN** from the docket.

This 13th day of April, 2016.

Signed By:
*David L. Bunning*   DB
United States District Judge

G:DATA/OPINIONS/London/15-6 MOO Dismissing 2241